UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHEILA CLARK,<br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA N.A.,<br>    Defendant. | Case No. 1:14-cv-00232-REB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court are Defendant's Motion to Dismiss (Dkt. 4) and Motion for Judicial Notice (Dkt. 5), and Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction (Dkt. 13). Having carefully considered the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

This case concerns a $343,850 mortgage loan Plaintiff Sheila Clark ("Clark") used to purchase property. Compl., ¶ 2. Clark stopped making payments under the terms of the loan and it went into default. Clark alleges that she applied for, and received, a "work out package" in 2009 and then a permanent loan modification in January 2010 from Defendant Bank of America N.A. ("the Bank"). Compl., ¶¶ 6, 12–13. She asserts in her briefing that the Bank "revok[ed] the terms" of the loan modification in August of 2012

**MEMORANDUM DECISION & ORDER - 1**

and declared her "to be in default despite her current payment status" under the modification agreement. Resp., p. 1 (Dkt. 9). Although Clark made some payments under the January 2010 modification, she stopped making payments in September of 2012. Compl. at ¶¶ 18–35.

Clark's Complaint alleges that the Bank failed to comply with the terms of the loan modification. *Id.* ¶¶ 19–44. She filed the instant action on June 13, 2014, asserting the following claims: breach of contract; fraud; breach of the implied covenant of good faith and fair dealing; equitable estoppel; and intentional infliction of severe emotional distress. Compl., pp. 6-8). The Bank seeks to dismiss all of Clark's claims.

## DISCUSSION

**A.     Motion for Judicial Notice**

The Bank requests that the Court take judicial notice of several documents. (Dkt. 5). Generally, with respect to Rule 12(b)(6) motions, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment under Rule 56 and allowing the non-moving party an opportunity to respond. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Still, the Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004). *See also* Fed. R. Evid. 201(b); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012). The documents submitted here fall

within the categories of documents appropriate for judicial notice. Additionally, Plaintiff has not objected to the motion. Accordingly, the Court hereby grants Defendant's Motion for Judicial Notice and will consider the Affidavit of Amber N. Dina, and the documents attached thereto, filed in support of the Bank's Motion to Dismiss. (Dkt. 5, Atts. 1–3).

B.  **Motion to Dismiss**

The Bank seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) for Clark's alleged failure to state a claim for relief.

   1.  *Legal Standards*

Rule 12(b)(6) motions assert that the plaintiff has failed "to state a claim upon which relief can be granted." What it takes to state a claim depends on the type of claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Other causes of action require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "short and plain" standard is satisfied if the plaintiff's allegations, taken as true, "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Detailed factual allegations" are unnecessary, but "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, (2009).

In considering the Bank's Motion to Dismiss, the Court has considered that Clark is *pro se* and Rule 15's liberal amendment policy. *See* Fed. R. Civ. P. 15(a) (providing that leave to amend "shall be freely given when justice so requires"). Where a plaintiff is

**MEMORANDUM DECISION & ORDER - 3**

proceeding *pro se*, the Complaint must be liberally construed and she must be given the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). The *pro se* plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give the defendant fair notice of what the claims are and the grounds upon which they rest. *Brazil v. United States Department of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Finally, if the Complaint can be saved by amendment, then the plaintiff should be notified of the deficiencies and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### 2. *Clark's Claims Arose After Her Bankruptcy Discharge*

The Bank argues that Clark lacks standing to assert any claims that arose before she filed her voluntary petition for Chapter 7 bankruptcy on October 21, 2009 because she did not list those claims on her petition and her claims are now part of the bankruptcy estate.[1] *See* Def.'s Mem., pp.5–6 (Dkt. 4-1); Dina Aff., Ex. A, p.3 (Dkt. 5-2).

Clark first applied to the Bank for a loan modification on March 16, 2009 and she made payments on that modification through October of 2009, when a foreclosure sale was scheduled. Compl. ¶¶ 4–6, 9. The sale was canceled and Clark allegedly entered a permanent loan modification agreement on January 19, 2010, which she executed and returned to the Bank on January 29, 2010. *Id.* ¶¶ 11–13. Her claims in this case, however, center around her allegations that the Bank revoked the January 2010 loan

---

[1] Clark obtained the bankruptcy discharge on January 19, 2010. Dina Aff., Ex. B (Dkt. 5-3).

**MEMORANDUM DECISION & ORDER - 4**

modification terms by declaring a large loan delinquency and default in August of 2012. *Id.* ¶¶ 29–44. *See also*, *e.g.*, Pl.'s Resp., p. 3.[2]

Although Clark alleges a nervous breakdown occurring in September of 2009 related to the first scheduled foreclosure, her claims primarily relate to the modification agreement she alleges she entered with the Bank on or about January 29, 2010, well after she filed her bankruptcy petition (and ten days after her bankruptcy discharge). *See* Compl., ¶¶ 46, 52, 57, 60; Dina Aff., Ex. B. Moreover, Clark confirmed in her response brief that all her claims accrued post-bankruptcy, when the Bank "abrogated" the modification agreement in 2012. Resp., pp. 2–3, 7 (Dkt. 9). In short, none of Clark's claims (as refined through her responsive briefing) had advanced to a point where Clark could present those claims in Court at the time she entered her bankruptcy proceedings or at the time she obtained the discharge in bankruptcy. However, to the extent Clark seeks damages or to raise a claim for emotional distress based solely on conduct occurring before January 19, 2010, the Bank's motion to dismiss is granted. Because Clark will be required to file an Amended Complaint for other reasons set forth below, her Amended Complaint should be revised for clarity to include only claims arising after her bankruptcy discharge.

---

[2] Clark's Complaint also recites facts from events occurring well after the January 19, 2010 bankruptcy discharge, such as her allegation that the Bank proposed a new modification in March of 2013 instead of honoring the January 2010 modification. Compl., ¶ 39.

**MEMORANDUM DECISION & ORDER - 5**

### 3. *Breach of Contract Claim*

Clark alleges that the Bank breached the January 2010 loan modification agreement by: (1) unilaterally repudiating the agreement; (2) refusing to apply payments according to the agreement; (3) making false representations concerning the validity of the agreement; and (4) unlawfully declaring her in default. Compl., ¶ 47. The Bank responds that this claim is inadequately pled because she has not alleged her own performance (that is, making every payment required by the agreement) and that performance is an element required for a breach of contract claim. However, Clark did make several payments under the loan modification and alleges that she only stopped making payments because the Bank first did not comply with the agreement.

Moreover, the Bank relies on a case in which a federal district court discussed a defendant's counterclaim for breach of contract to support its argument that Clark must have fully performed under the agreement to bring a breach of contract claim. *See Vista Eng'g Techs., LLC v. Premier Tech., Inc.*, No. CV 09-00008-E-BLW, 2010 WL 2103960, at *2 (D. Idaho May 25, 2010). In diversity jurisdiction cases, the Court applies state law. To that end, the Bank also relies on an Idaho Supreme Court case to support its argument. *See Enterprise, Inc. v. Nampa City*, 536 P.2d 729, 735 (1975). However, that case was decided in 1975 and a more recent case from the Idaho Supreme Court explains in detail the elements and the different burdens placed on a plaintiff and a defendant in a breach of contract action:

> A plaintiff who wishes to recover for a breach of contract
> bears the burden of proving the existence of a contract and
> fact of its breach . . . ."
>      . . .
> To avoid liability once the plaintiff meets its burden, the
> defendant must prove that its performance was legally
> excused. . . . If a breach of contract is material, the other
> party's performance is excused. . . . Thus, a party sued for
> damages may *defend* on the grounds that its performance was
> excused by the other party's material breach.

*Melaleuca, Inc. v. Foeller*, 155 Idaho 920, 924, 318 P.3d 910, 914 (2014) (citations and internal quotation marks omitted) (emphasis added).[3] Here, Clark has sufficiently alleged that a contract for the loan modification exists, and that the Bank breached that contract. It is not necessary that Clark, at this stage of the proceedings, allege anything further to go forward on her breach of contact claim.[4]

The Bank also argues that Clark failed to identify how the Bank breached the terms of the loan modification agreement. However, Clark argues that the Bank breached their agreement when it informed her the loan was in default and provided an allegedly inaccurate account statement showing a large delinquency. Clark also alleged the Bank

---

[3] *See also Ridenour v. Bank of Am., N.A.*, No. 13-CV-0317-BLW, 2014 WL 2452990 (D. Idaho May 22, 2014) (quoting *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 297 P.3d 232, 241 (2013) (reciting Idaho's breach of contract elements: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages")).

[4] *See also Longest v. Green Tree Servicing LLC*, No. 2:14-CV-08150-CAS, 2015 WL 546095, at *6 (C.D. Cal. Feb. 9, 2015) (discussing cases in which courts have determined that the fact a plaintiff initially breached a mortgage agreement does not necessarily preclude a breach of contract claim).

**MEMORANDUM DECISION & ORDER - 7**

informed her the January 2010 loan modification was not notarized and the Bank would not "honor" it. Compl., ¶¶ 33-44. These allegations are sufficient for Clark's breach of contract claim to go forward past the motion to dismiss stage. Accordingly, the Bank's request to dismiss this claim is denied.

### 4. Fraud Claim

#### a. Timing

The Bank argues that Clark's fraud claim is time barred. Idaho's statute of limitations for fraud is three years. Idaho Code § 5-218. Thus, the conduct underpinning Clark's fraud claim must have been made between June 13, 2011 and June 13, 2014 (the day Clark filed her Complaint), absent a delayed discovery.

Clark alleged the Bank represented that the loan modification agreement "replaced the terms of the original mortgage," but that its later actions revealed that "representation was false." Compl., ¶¶ 52–53. As an initial matter, a fraud claim does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Idaho Code § 5-218(4). Here, Clark alleged she did not know the Bank's alleged representations that her loan modification replaced her original mortgage were purportedly false until Bank representatives informed her that the modification was not valid, in August of 2012, months after the Bank had already accepted payments under the January 2010 modification. As Clark explains, the Bank allegedly "fraudulently" induced her to enter the loan modification and she could not have known until June 13, 2012 that the Bank would later determine that the modification "was not valid". Pl.'s Resp., p. 3

**MEMORANDUM DECISION & ORDER - 8**

(Dkt. 9); Compl., ¶ 33. Thus, she has a plausible argument, at this stage of the litigation, that she could not have discovered the alleged fraud until 2012 (which in turn would start the statute of limitations on that date, instead of the date of any earlier representations).

Moreover, Clark's Complaint alleges that the Bank made representation that were allegedly false during the relevant three year limitations period, even as calculated by the Bank (as starting three years before Clark filed her Complaint). These representations include some that occurred by way of accounting statements Clark received in July of 2011 and January through June of 2012 (and that she alleges accurately reflect the terms of the modification), Compl., ¶¶ 24, 28, and telephone conversations in January and July of 2012 (in which Clark alleges she was assured that "errors" would be corrected and that her loan was "now current" under the modification agreement), *id.* at ¶¶ 27, 30. Thus, Clark alleged that representations were made during the three year period of time prior to her filing the instant case, and those representations may potentially form the basis for a fraud claim, even if she is not able to extend the date on which her fraud claims accrued for the purpose of the limitations period because she did not discover the misrepresentations until a later time.[5]

---

[5] Clark's briefing also states that "the fraud began when [the Bank] informed [her] that, despite her being current with payments under the Agreement, the loan was in default." Pl.'s Resp., p. 3 (Dkt. 9).

**MEMORANDUM DECISION & ORDER - 9**

> b. *Allegations*

The Bank also argues that Clark's fraud claim is inadequately pled because it lacks any particularity. To plead a claim for fraud in Idaho, Clark must specifically allege: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) her reliance on the truth; (8) her right to rely thereon; (9) and her consequent and proximate injury. *Dengler v. Hazel Blessinger Family Trust*, 106 P.3d 449, 453 (2005). Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be pled with the required factual specificity.

The Bank's primary complaint is that Clark did not identify the statement she relied on to induce her to execute the loan modification agreement in January 2010, when that representation was made, who made it, or any other significant details. To the extent Clark is relying on representations made around the time she entered the 2010 modification agreement, the Court agrees with the Bank that more detail is required. *See* Compl., ¶¶ 11-14. Clark may file an Amended Complaint setting forth more detail in that regard. To the extent she relies on other later representations, discussed above, the Complaint is adequate.

*5.     Implied Covenant of Good Faith and Fair Dealing*

The Bank argues Clark cannot support an implied covenant claim because she has not identified what term of the agreement was breached. A party violates the implied covenant of good faith and fair dealing when it "violates, nullifies or significantly impairs any benefit of the . . . contract". *Battelle Energy Alliance, LLC v. Southfork Sec., Inc.*, 4:13-cv-00442-BLW, 2014, WL 970057, at *11 (D. Idaho Mar. 12, 2014). The covenant "requires that parties perform in good faith the obligations imposed by their agreement." *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 390 (Idaho 2004). Because the breach of contract claim survives the Motion to Dismiss, the implied covenant claim also may go forward at this time. The Court will consider the Bank's argument as to the amount of damages Clark may recover under the implied covenant claim at a later time, if necessary.

*6.     Equitable Estoppel Claim*

The Bank asserts that Clark's equitable estoppel claim is time-barred and inadequately pled, arguing that Clark has not identified what false representations the Bank made that she relied on.[6] As discussed above in the section discussing Clark's fraud claim, Clark argues she could not have known about her equitable estoppel claim until

---

[6] "The elements of equitable estoppel are, (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was made with the intent that it be relied upon and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Twin Falls Clinic & Hospital Bldg. v. Hamill*, 644 P.2d 341, 345 (1982).

**MEMORANDUM DECISION & ORDER - 11**

about June 13, 2012 because that is when the Bank allegedly told her she would need to do a short sale or deed in lieu of foreclosure and when it indicated that the loan modification was not in effect. Resp., p.3 (Dkt. 9); Compl., ¶¶ 29, 31, 33. Thus, her claims are not barred by the statute of limitations. Additionally, Clark has alleged several later misrepresentations related to the validity of the 2010 loan modification.

The Bank also argues that Clark failed to explain how she acted on the alleged misrepresentation to her prejudice. Clark's argument is that the Bank's representatives represented, at the time of the loan modification and at later times, that the loan modification replaced the original loan, but then the Bank attempted to collect on the loan under the original terms or other terms that raised her monthly payments and did not properly account for her payments. It is the change in terms and disputed accounting, allegedly resulting in higher payments and a notice of default, that potentially could support Clark's equitable estoppel claims.

### 7. *Emotional Distress Claim*

The Bank also argues that Clark's intentional infliction of emotional distress claim fails because it is subject to a two-year statute of limitation and is time-barred. Def.'s Mem., p. 13 (Dkt. 4-1) (citing Idaho Code § 5-219(4)). Here, Plaintiff filed this action on June 13, 2014, meaning that the actions giving rise to the emotional distress claim must have occurred after June 13, 2012. To prevail on a claim for intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful

**MEMORANDUM DECISION & ORDER - 12**

conduct and the emotional distress; and (4) the emotional distress must be severe." *Evans v. Twin Falls Cnty*, 796 P.2d 87, 97 (Idaho 1990). To be actionable, the conduct must be so extreme as to "arouse an average member of the community to resentment against the defendant," and "must be more than unreasonable, unkind, or unfair." *Mortensen v. Stewart Title Guar., Co.*, 235 P.3d 387, 397 (Idaho 2010) (citations and internal quotation marks omitted).

Clark argues that she allegedly started suffering from the Bank's conduct when she had a nervous breakdown in 2009, but that her emotional distress continued after June 13, 2012 because of "grueling telephone calls, unanswered written requests[,] and [the] continued threat of losing the home she has struggled to save." Pl.'s Resp., p. 3 (Dkt. 9) (citing Compl., ¶¶ 29–44). Clark asserts that she provided the background information on her interactions with the Bank as evidence that the Bank had no intention of honoring the loan modification agreement and so its conduct under that agreement was fraudulent and her emotional distress continued. Pl.'s Resp., pp. 3–4 (Dkt. 9). However, Clark is relying on the 2009 nervous breakdown to demonstrate her severe emotional distress connected to the *later* events she relies on as the wrongful conduct (the 2012-13 interactions with the Bank in which she alleges they repudiated the loan modification). *See* Pl.'s Resp., p. 7 (citing twice to paragraph 8 of the Complaint, which describes the 2009 nervous breakdown). Clark's emotional distress claim thus lacks a sequential causal connection between the actions (occurring in 2012-13) on which her claim is based, and the severe emotional distress (which occurred with her reported nervous breakdown in 2009).

**MEMORANDUM DECISION & ORDER - 13**

However, because Clark is required to amend her Complaint for other reasons, and it is not clear that any possible amendment to the emotional distress claim would be futile, Clark may provide more allegations to support this claim in her Amended Complaint. If she does not, this claim will be dismissed without further notice.

C.     **Motion for Temporary Restraining Order**

Clark asks the Court to issue an injunction prohibiting the Bank "from further [alleged] tampering with the accounting evidence critical to this case and conducting account activities based on account data they have [allegedly] manufactured." (Dkt. 13, p. 1). Specifically, Clark wants the prohibition to include "reporting of alleged delinquencies to credit bureaus, activities intended to enforce terms and conditions of the note, foreclosure activity, or any activity to secure interest or other collateral pertaining to the loan, pending disposition of this case." *Id.* at p. 2. She also alludes to a possible future foreclosure based on the recent notices the Bank has provided her.

  1.     *Legal Standards*

Clark seeks both a preliminary injunction and a temporary restraining order. Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65. Under Rule 65(a), a preliminary injunction can be issued only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Issuance of a temporary restraining order, on the other hand, requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in

**MEMORANDUM DECISION & ORDER - 14**

opposition. . . " Fed. R. Civ. P. 65(b). A temporary restraining order may issue only upon the tender of security. Fed. R. Civ. P. 65(c). In this case, the Bank has had the opportunity to respond to Clark's motion and Clark chose not to file a reply to the Bank's response. Thus, the matter is ripe for the Court's consideration.

The standard for issuing a preliminary injunction is well established, and mirrors that for a temporary restraining order. *Stuhlberg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). "[I]njunctive relieve [is] an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). The party seeking relief must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent relief; (3) the balance of equities tips in its favor; and (4) the requested relief is in the public interest. *Id.* at 20. Under the Ninth Circuit's "sliding scale" approach, the first and third elements can be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" towards the movant is sufficient so long as the other two elements are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

   *2.   Discussion*

Clark complains that the Bank has credited her with making more than $46,000 in mortgage payments in 2014, and argues this is not accurate because she has not made any payments since 2012. Pl.'s TRO Mem., p. 2 (Dkt. 13-1). Clark also accuses the Bank of "manufactur[ing]" payment data for the purpose of putting her mortgage into a "fresh[]

**MEMORANDUM DECISION & ORDER - 15**

default[]". *Id.* Any injury from these alleged accounting mistakes are speculative and do not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[U]nder Winter, plaintiff must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."). Additionally, if this case proceeds through discovery, Clark may obtain relevant information related to her account and can present arguments to the Court as to the proper accounting of payments, interest, and other matters related to the servicing of the loan. The loan is still in existence and the Bank may continue to the service the loan and make accountings related to the loan throughout the litigation process.

Additionally, even though a threatened imminent foreclosure rises beyond speculative injury,[7] Clark has not made payments on her mortgage loan, even in the amount she argues is the correct amount under the terms of the 2010 loan modification. Her Complaint does not allege that she does not owe the Bank payments under the loan modification, rather she alleges that the Bank is requiring her to pay more than that agreement requires and did not properly account for the payments she did make. Under these circumstances, the Court cannot say the balance of equities tips in Clark's favor, or that injunctive relief is in the public interest. Rather, at this stage of the proceedings,

---

[7] Although Clark argues that the Bank's new accounting of her mortgage puts her "on its track to foreclosure" she has not reported that foreclosure proceedings have been initiated. *See* Pl's TRO Br., p. 8 (Dkt. 13-1). If that occurs, Clark may seek further appropriate relief. Accordingly, the denial of her Motion will be without prejudice.

**MEMORANDUM DECISION & ORDER - 16**

where Clark has made sufficient allegations to go forward with her Complaint, but much of the details surrounding this case are yet to be obtained, preliminary injunctive relief is not appropriate. Finally, it is far from clear that Clark is likely to proceed on the merits of this case. In short, Clark has not met her burden to demonstrate that a TRO or preliminary injunction are appropriate in this case under the relevant standards.

Clark also raises new arguments in her TRO motion that are unrelated to the allegations contained her Complaint. For example, Clark contends that the Bank may have collected mortgage insurance the insurer may now hold the note; further arguing that any foreclosure by the Bank now would be "illegitimate and outside of the statute of limitations". Pl.'s TRO Mem., pp. 3–4 (Dkt. 13-1). Clark did not raise these issues as claims in her Complaint and it is beyond the scope of the Court's review at this time to determine whether Clark is entitled to preliminary or emergency injunctive relief based on these new arguments.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Defendant's Motion to Dismiss (Dkt. 4) is **DENIED,** in part, and **GRANTED**, in part, as set forth in more detail above.

2) Plaintiff shall file an Amended Complaint on or before **April 24, 2015.** Defendant shall file a response in the ordinary course.

3) A telephone scheduling conference is set for **May 11, 2015 at 10:30 a.m.** Defendant's counsel and Plaintiff shall confer and submit a stipulated

litigation plan on or before **May 1, 2015.** A copy of the litigation plan form is available on the District of Idaho Website at http://id.uscourts.gov/district/forms_fees_rules/Civil_Forms.cfm. If the parties cannot stipulate to a plan each may submit a separate plan by the May 1st due date.

4) Defendant's counsel and Plaintiff shall confer forthwith and develop an alternative dispute resolution ("ADR") plan. If the parties need help selecting a mediator or scheduling this matter for a settlement conference with a magistrate judge, they may contact the Court's ADR Coordinator at 208-334-9067. ADR shall be completed by **September 11, 2015.**

5) Defendant's Motion for Judicial Notice (Dkt. 5) is **GRANTED**.

6) Plaintiff's Motion for Temporary Restraining Order/Preliminary Injunction (Dkt. 13). is **DENIED**, without prejudice.

DATED: **March 27, 2015.**

Honorable Ronald E. Bush
U. S. Magistrate Judge